FILED
LODGED
RECEIVED

MAIL

OCT 26 2006

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                        DEPUTY

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF WASHINGTON

Michael A. Piña, Doc 879424
**(Name of Plaintiff)**

vs.

Harold Clarke, DOC SEC
Theodore lewis, CCD DOC
Cly F EVANS, RAPM DOC
Mrs. Ramsdell-Gilkey, DOC Appeal Dir., et.al.
**(Names of Defendants)**

**CV06 1547 JCC-JPD**

CIVIL RIGHTS COMPLAINT
BY A PRISONER UNDER 42
U.S.C. § 1983

## I. Previous Lawsuits:

A. Have you brought any other lawsuits in any federal court in the United States while a prisoner:
☐ Yes   ☒ No

B. If your answer to A is yes, how many?: ___N/A___ Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper using the same outline.)

1. Parties to this previous lawsuit:

Plaintiff ___N/A___

Defendants _____

06-CV-01547-CMP

2. Court (give name of District) _____

3. Docket Number _____

4. Name of judge to whom case was assigned _____

5. Disposition (For example: Was the case dismissed as frivolous or for failure to state a claim? Was it appealed? Is it still pending?) _____

6. Approximate date of filing lawsuit _____

7. Approximate date of disposition _____

II. **Place of Present Confinement:** King County Correctional Facility _____

   A. Is there a prisoner grievance procedure available at this institution? ☒ Yes    ☐ No

   B. Have you filed any grievances concerning the facts relating to this complaint?

                                                           ☒ Yes    ☐ No

      If your answer is NO, explain why not _____

   _____

   C. Is the grievance process completed?    ☒ Yes    ☐ No

      If your answer is YES, **ATTACH A COPY OF THE FINAL GRIEVANCE RESOLUTION** for any grievance concerning facts relating to this case.

III. **Parties to this Complaint**

   A. Name of Plaintiff: Michael A. Piña DOC# 879424 Inmate No.: 206039109

      Address: 5003 16ᵗʰ AVE NE , SEATTLE , WA 98105

(In Item B below, place the full name of the defendant, his/her official position, and his/her place of employment. Use item C for the names, positions and places of employment of any additional defendants. Attach additional sheets if necessary.)

B. Defendant HAROLD CLARKE ; official position DOC secretary ;
place of employment Department of Corrections , WA .

2

C. Additional defendants   CCO Theodore Lewis ; Cly F EVANS, DOC REG
Appeals Panel Member (RAPM) - DAVID GILKEY (RAPM);
Nanci Parks (RAPM) ; Mrs. Ramsdell-Gilkey, DOC Appeal director.
CCO Patricia Turner ; CCO Gary Rink ; CCO Troy Duxbury, CCS Brooke Raymond.

## IV.   Statement of Claim

(State here as briefly as possible the facts of your case. Describe how each defendant is involved, including dates, places, and other persons involved. Do not give any legal arguments or cite any cases or statutes. If you allege a number of related claims, number and set forth each claim in a separate paragraph. Attach additional sheets if necessary.)

I. Is it constitutionally offensive for me to pay the price for
an apparent DOC Hearing Board deficiency to interpret case law
while acting quasi-judicially ; thus knowingly and willfully violating
my 5th AM rights ? Alternately, does the DOC exhonerate or
provide immunity for this body to act in opposition to
these guarantees and of equal protection under the law ?

Participants: Mrs. Ramsdell-Gilkey ; CLY F. EVANS ; DAVID GILKEY ;
NANCI PARKS ; HAROLD Clarke.

FACTS:
During the time period of January 2006 till the present (see
addendum A "Timeline of pertinent rulings by DOC hearing body.") I have
been subjected to RAPM decisions that have taken the following
pattern :

1.) An emboldened hearing panel, not willing to address, at issue
important constitutional arguments by an offender. (APDX B)

2.) A hearing panel that in appearance is in existence to
validate an inferior tribunals rulings, or is in existence
only to satisfy a mandate.

In an appeal decision dated 9/20/2006 by the Regional
Appeal Panel; in a letter received by the defendant in August of 2006
by Mrs. Ramsdell-Gilkey, DOC Appeal Director , and in previous attempts
by the defendant to Harold Clarke, DOC director ; the following
justifications have been set forth as to why the RAP acts as it
does : " As we have explained in previous appeal responses , DAA

3

hearings are administrative processes, and not judicial processes. The panel will not research nor interpret the legal citations reference in the appeal." ; Emphasis, The importance of why this hearings deficiency has made the process detremental, in my instance.

If this board can not transfer, a have the capacities to interpret, critical issues that may surround a violation, then the process is deficient. This is a heavy cost, paid only by the offenders. In my case over 375 days of incarceration. From the experience the following are demonstrative:

1.) I am being punished for not taking a polygraph based on, the RAPM along with the DOC Hearing officers, once constitutional issues where raised they either "buried their head in the sand" about, or chose to not have the interpretative capacities to address. It is offensive for me to be punished for this short-fall or ignorance.

2.) Both the RAPM and their lower bodies officers, along with CCO's utelize the OAA specifically as their authority to impose conditions, penalties, programs at will. I have experienced violations in August 2006; imposition of work crew (which statutes explicitly exclude sex offenders), and, refusal of this entities willingness to honor, that, I can plead the 5ᵗʰ on potentially incriminating questions posed by a CCO in violation of rulings such as <u>U.S. v. Murphy</u>, and <u>Hoffman v. U.S.</u>.

4
2/5

which are violations of my 5th and 14th AM
rights, once a threat turns into incarceration. (APDX A).

The magnitude of the OAA containing such authority
is not within its intent of legislation, or the
authority a trial court can utilize in transferring
or delagating administrative types of duties to
a lower tribunal. It would be constitutionally
offensive for a higher court to relinguish its
punishment/sentencing authority.

The OAA is importantly constrained by its own
wording to not supercede the sentencing courts
jurisdiction. Thus DOC, through the OAA, is not
given unabashed authority to ignore important
and controversial case-by-case case law if it
becomes pertinent to a hearings proceedings. In
fact the spirit of the OAA's processes along with
it controlling courts "appeal style format," is based
on the checks and balances mechanisms in place
to protect against governmental persecution or
lethargy against a class of people or offender. It is
egregious to see that the DOC's Harold-Clarks' due
process guarantees are thwarked by rulings made
by his subbordinates; Mrs. Ramsdell-Gilkey, David
Gilkey, Cly F. Evans and Nanci Parks who stedfastly
refuse to address key issues that punish a sex offender
wrongfully if not addressed. (APDX B).

I have made many attempts in numerous
letters to Mr. Clark, and his subsequential bodies
to no avail. Of course, other than the justification,

made in to what appears to not acknowledging the law as written. This amongst other things, that the OAA gives it authority to impose conditions and make rulings that are contrary to rulings of law.

If the hearing officer during a preceeding is ill-balanced in their ability to "source" important legal answers that may cause a ruling, malaligned constitutionally, then the offenders constitutional sanctity is replaced by a dificient process that results in a great suppression of a constitutional safeguard.

If the next level of "safeguard" is an embolded hearing panel, not willing to address, at issue constitutional arguments proffered as defense, then the resultant product, is a board that either has the appearance to be enpaneled to validate the inferior panels rulings, or, exists only to satisfy a mandate.

During a trial period, the state is given the graces of receiving the evidence of a controversy to their advantage. That rules balance, holds that, post-conviction controversies should fall in favor of the accused/convicted. This long standing rule is applicable in administrative type hearings.

Further, the preponderance of evidence standard, used by these type of hearings, gives the state an already lower threshold of proof. Thus, the aforementioned rule, should dictate any hearing officer or hearing boards evaluation of the facts. Simply stated the

6
4/5

proceeding should shed more light in favor of the accused, opposed to the State.

In this instances case, and action, DOC has acted improperly by interjecting a waiver that forces an offender to explicitly waive his rights against self-incrimination without the guarantee of immunity of criminal proceedings. The RAPM for over 375 days of incarceration and over 8 violation hearings, in which the offender repeatedly asked for clarification and ruling, not only from the board, but as well as its perspective authorities, have refused to acknowledge their quasi-judicial duty.

The continual insistence, by this board and officers, to bury its head in the sand in reviewing the at hand controversies, violates the spirit of the court order, and even its own jurisdiction, given to it to administrate rulings quasi-judicially.

The RAPM, who have decided to act against their own charter, that as an "administrative" tribunal they have no obligation to address case-law as it becomes relevant to a hearing, is acting negligicantly.

In the hearing boards summary, and, along with the many hearings I have been subjected to, DOC's mantra has been, that until the issue of the inserted waiver was resolved, I should "waive my constitutional right or I will be in violation of the court order." This oppressive — and circular — logic is misdirected and troublesome, to equal protection under the law, as well as in bad faith.

II. CCO. Theodore Lewis's has committed perjury in order to affect an act question DOC controversy, a "common scheme".

On September 21st, 2006 CCO Theodore Lewis and I had a brief meeting after I refused to sign the waiver form, DOC 05-737, provided by the DOC by Northwest Polygraph Services Inc, (PO BOX 12773, Olympia, WA 98508 (360) 280-5881, FAX 866 0533). This waiver form, as well as other waiver forms provided by other polygraphers, attempt for me to waive my 5th AM rights against self incrimination in opposition to the U.S. constitution, an as ruled in Minnesota v. Murphy, Hoffman v. United States and Antelope v. United States. (APDX C, D). I Michael A Pina, filed a personal restraint petition with the Court of Appeals in Washington case #: 58704-8-I, in January 2006 attesting this engregias act of DOC forcing me to waive this right. To date I have received an additional 375 days of incarceration since my release from prison on August 31st, 2005; cause no. 04-109 1426.

One of the most critical components of my argument is the 2005 case law United States v. Antelope, and Minnesota v. Murphy; which clearly states that supervisees forced to take a polygraph post-release, can plead the 5th upon questioning of potentially incriminating answers, if they feared criminal consequences would result. This offer of "immunity" was safeguarded through these rulings.

During my petition, I extensively utilized both Minnesota v. Murphy, and United States v. Antelope in my defense; showing both where applicable and ripe in my case. In April of 2006 the State of Washington

8

1/6

responded to my initial petition, stating that my arguments where not substantial and the case should be dropped. I subsequentially replied to their argument, further, clarifying my position.

On August 2006, the CAP asked for the DUC of Washington to respond to my complaint, the court granted an extension till October 27th, 2006 stating "However, no further extensions should be anticipated." (Dated Sept. 26, 2006).

On 10/3/06, I received a Report of Alleged Violations, RUAV, by CCO T. Lewis that grossly misrepresented KEY subject matter as it regards my refusal to explicitly waive my 5th AM guarantees. He stated:

"Mr. Pina added that taking and passing a polygraph examination would produce information which would be potentially damaging to his case or appeal." (RUAV dated 10/3/06).

This statement if successfully attributed to me, would be detremental in my 5th AM arguments offerred to the CAP. Once receiving the RUAV, I immediately filed a complaint of potential foul play by the States representative, to the CAP, DOC Hearing Office, Judge Palmer Robinson, and CCO Theodore Lewis. (See APPENDIX E). The statement attributed was improperly inserted, and a false-hood.

CCO Lewis, although only being my assigned CCO since August 2006, has known about my case since February of 2006 when he arrived at my extended families home, which I had sublet to them during my incarceration period of January 11th, 2006 - March 2006. I happened to be at their residence, having just being released from

my January 11th violation; on "refusing to take the polygraph"
due to the aforementioned waiver issues. I was subsequentially,
violated for possession of the residents "heterosexual pornography"
which was found in one of the residents backpack in his
bedroom. I served 20 days for this violation, alone. While,
incarcerated I wrote a complaint to Attorney General
Rob McKenna, complaining that the CCO's raid of my
former residence, was an act against my insistence
and refusal to sign the 5th Am. waiver. This office
returned a letter stating "that I should hire a lawyer."

In late February 2006, CCO Lewis walked in during
a heated conversation between myself, CCS Brooks
Raymond, and CCO Gary Rink; in regards to my complaint
that 1) the newly informal restriction from me returning
to Capital Hill to the Boylston Hotel (the place I
was released to while exiting AHCC in Aug 31, 2005) would
no longer be acceptable, was suspecious, 2) I
felt this was part of a major scheme to punish me
for standing staunchely on the issues I raised in
my January petition; that DOC was acting improperly
in forcing me to waive my rights with the inserted DOC
waiver provided by the polygrapher; and 3) that I
found that since I was given no notification prior to
release, that day, that I would have to find a
new residence area, that it appeared suspicious for
them to do this, and make me homeless. I later
found out that the "homeless designation" would make me
change my sex level registration designation to a
level III.

10

3/6

One of my complaints, prior to this date, was that the DOC in December of 2005 had stated "since the judge had modified my J&S to not include sex therapy treatment (modified to psychoeducational therapy) that the Seattle Police Department had changed my SLR to level III, and I would be transferred to the corresponding Sexual assault unit, effective that hearing." (November 22nd, 2005).

A PDA discovery initiated in Feb. 2006, revealed my SLR to be a 'level II and that that DOC was improperly representing me to the public. The change by the SPD never took place till June of 2006, and only after 4 more violations while assigned to the SAU which manages level III sex offenders Only.

Thus, from December 2005 - June 2006 - I was improperly raised to a level III by DOC, bombarded by a "hyper·level of scrutiny" of the SAU, and only until they finally mustered enough polygraph violations did the SPD change my level II designation to level III.

During the late February 2006 meeting, CCO Lewis engaging in conversation with CCS Brooks, CCO Rink and myself I strongly upheld the rulings of <u>Antelope</u> and <u>Murphy</u>, holding that DOC punishing me and I was being treated offensively, by them trying to force me in signing a waiver. CCO Lewis, at the time, was also aware and present when a week later I got violated, number 4, for Refusing to sign the 5th AM waiver, without a guarantee.

During that arrest, CCO Lewis was present

<u>11</u>

4/6

when CCS Brooks Raymond, acknowledged he had received a phone call from the states Prosecuting Attorney, handeling the States Appeal, as it related to my personal restraint petition. A week later I was handed the states reply by CCD RINK, when he brought the ROAU for that violation to RJC.

The states argument, against my petition, was that since I had not been required to take Sex Therapy Treatment, I was never required to waive my rights in taking the polygraph. Thus, my petition was meritless. I countered, the state was mistaken in their interpretation. But, that in fact, the threat of self-incrimination existed whenever a post-conviction supervisee was forced to answer potentially incriminating questions irregardless of a sex therapy requirement. And further, that the insertion of a modified miranda waiver, that was required by DOC, that explicitly waived all constitutional safeguards against further prosecution was constitutionally offensive, and in opposite to court rulings presented as a defense.

One of the critical issues that surround a 5th AM argument is "threat." If there exists no threat of prosecution, or the supervisee has no fear of self-incrimination, then he must answer the posed question CCO Lewis, in his ROAU dated October 3rd, 2006 acted maliciously. He was perfectly aware of all my complaints as it related to the polygraph. He was aware of my petition and of my personal views of the waiver. I even had a detailed

12

5/6

conversation with him in its regard, stating adamantly that "immunity" was a critical issue. He in his R&AV, consciously chose to misstate my words. This misstatement was not a casual incision. For if it where true that I said this, then my arguments presented to the courts would be at question. It is evident from what I can see by his actions that 1.) he acted alone or 2.) in tandem in order to insert a statement into record that could defeat my argument presented to the courts.

His statements are incorrect. Fallacious as to attributing my taking a test and "passing an exam." And is my belief, that he did this knowingling, thus in complete BAD FAITH, and has committed perjury.

Unfortunately, CCO Lewis' incision of a harmful statement that lacks credibility and factual basis, follows a common scheme I have seen and documented whare DOC CCO's "color" facts into record with no fear of reprisal. In a complaint to Rob McKenna, the DOC under secratary during Summer of 2005, Harold Clarke, and others within DOC of this behavior, I have diligently highlighted and complaint about these "opinions" (APDX A; CCO Rink, Denning) put into record by the way of "administrative hearings", summary reports, and classification tools. All to "deaf ears." And more importantly "no change" to the record. In my case this has gone beyond—"if the sting hurts!" (APDX B).

13

6/6

## V. Relief

(State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.)

For the damages suffered at the hands of these acts, to say nothing to the mental anguish and stress for the prolonged incarceration, loss of employment opportunies, Housing, and prejudice seen in housing, employment opportunities, stigmatism; along with undue burden of family members stabelizing me by financing and coping with such incarcerations imposed for these and other yet discovered. The petitioner seek monitary compensation of $2.5 Million or viewed by the court and set by such ruling, furthermore, to sanction D.O.C. by setting boundaries to their powers in such proceedings, and report writings.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this __16__ day of __OCTOBER__, 2006__.

_(Signature of Plaintiff)_

14

## Appendix A

## Timeline of pertinent rulings by DOC Hearing body[*]:

|  |  | violation count |
|---|---|---|

**NOV 2005 ( 30 days)**      30 days
- Polygraph imposition OAA  • CCO T. DUXBURY level III misrepresentation
- Pre - DOC FORM 05-753

**Jan 2006 ( 30 days)**      <u>60</u>
- Polygraph - waiver issues  • report writing complaint CCO G. Rink
- Pre - DOC FORM 05-753      <u>90</u>

**FEB 2006 ( 60 days); H.O.- A. Galando**      <u>120</u>
- Polygraph - waiver issues  • report writing complaint CCO G. Rink
- Witness confrontation - D.P. issues
- Pre - DOC FORM 05-753

**MAR 2006 (60 days)**      <u>180</u>
- Polygraph - waiver issues  • report writing complaint P. Turner/ G. Rink
- Pre - DOC FORM 05-753

**MAY 2006 (60 days)**      <u>240</u>
- Polygraph - waiver issues  • report writing complaint P. Turner
- Prior to Form DOC 05-753

**AUG 2006 (75 days); H.O. - A. Galando**      <u>315</u>
- Polygraph - waiver issues (2 viol.)     • Report Writing complaint P.Tur.
- WORK CREW - Mrs. Ramsdell- Gilkey ruling
- Pedophilia Written assignment - U.S. V. Murphy
- Prior to form DOC 05-753

**SEPT 2006 (60 days)**      <u>375</u>
- Polygraph - waiver issues
- FORM DOC 05-753, modified miranda waiver
- Report writing complaint CCO T. Lewis

[*] Hearing body must be decisions made collectively by :
CLY F. EVANS, DAVID GILKEY, NANCI PARKS, MRS. RAMSDELL-Gilkey.



STATE OF WASHINGTON

## DEPARTMENT OF CORRECTIONS
P.O. BOX 41100 • Olympia, Washington 98504-1100

## REGIONAL APPEALS PANEL DECISION

**FROM:** DOC Regional Appeals Panel, NORTHWEST Region, SEATTLE WA

**TO:** Michael Pina     **DOC #:** 879424     **Date:** September 20, 2006

On August 21, 2006 a DOC Hearing was conducted by, Hearing Officer Andrea Galando, at Kent Regional Justice Center and the Hearing Officer found you guilty of failing to follow directive to fill out work-crew paperwork; twice failing to submit to a polygraph examination, and failing to follow directive to complete a writing assignment. The Hearing Officer issued a Hearing and Decision Summary on August 21, 2006 and imposed the following sanction upon you: 75 days confinement with credit from 7/18/06; comply with all facility rules; report DOC within one business day of release; enter psycho-sexual education classes within 7 days of release.

On August 29, 2006, your appeal was received in which you requested a review of the Hearing Officer's decision and/or sanction. You specifically appealed:
- x    The finding(s) of guilt
-      The sanction(s) imposed
- x    Other, as explained below:

Your appeal of this hearing consisted of 7 handwritten pages. As with the previous appeals of yours that we have reviewed, we must again note that the writing style you employ including nearly illegible penmanship, your insistence on using abstract and incorrect "legalese", as well as frequent run on sentences, again made it challenging to determine precisely what issues you are raising in your appeal.

What we determined was that you objected to having the hearing conducted when you were requesting to have it continued further in an effort to obtain additional evidence. You state that your constitutional rights were violated in a number of ways including the Hearing Officer being more concerned about the State's ability to present their case on controversial issues than in acting as a "detached officer". You object to the HO's statement that you were making your supervision difficult by "clouding your supervision". You then say that you have the right to object to DOC's imposing "pet programs or sanctions". You contend that DOC has no authority to impose work crew, and that DOC did not provide you a specific statute which provides such authority. You also say that filling out the work crew paperwork was essentially forcing you to "volunteer for an unpaid job" that interfered with your existing employment. You continue by saying that DOC is circumventing legislative intent by imposing work crew participation.

Your appeal points regarding the polygraph exam violations included your position that you had asked DOC to provide you answers to questions you had posed prior to a hearing being conducted; CCO not calling the polygraphers as witnesses; that a time mix up had occurred on one of the polygraph exam days; that the HO made her decision on impermissible evidence. You state that the requirement of writing a paper associated with Violation 6 was a violation of your constitutional protection against self incrimination. You add that the HO was misguided and biased in her determination that the violation was sound and did not violate your constitutional rights.

The DOC Regional Appeals Panel has investigated your appeal request and finds that:

As we have explained in previous appeal responses, OAA hearings are administrative processes, and not judicial processes. The panel will not research nor interpret the legal citations reference in the appeal.

We reviewed all the material from your hearing including the discovery packet, the Hearing Officer's written report, and your written appeal. We will first address your position that the hearing should be postponed until all the questions you had asked DOC to answer for you were answered. It is not the responsibility of DOC to prepare and provide to you the documents, and citations you feel are germane to your appeal issues. The DOC in this case did allow you an extra couple of weeks to prepare your defense. We feel the Hearing Officer correctly determined that further delay in conducting your hearing was not necessary, and that if you were so inclined you could appeal the outcome of the hearing with an appeal such as the one we now respond to, and eventually with a PRP if you deemed that necessary.

.Your appeal made numerous references to the Hearing Officer being biased, "not detached", violating your rights, etc. The panel believes that it is clear from the Hearing Officer's report and your appeal that the two of you had different perspectives on the issues involved in this matter. That reality does not necessarily translate into bias or your rights having been violated. The Hearing Officer was thorough and clear in her report as to why she entered guilty findings and why she felt the sanction imposed was appropriate. The panel does not agree that her decisions or the manner in which she conducted the hearing reflected any bias or violation of your rights. We were interested that you seemed to take particular umbrage at the Hearing Officer stating she felt that you were "clouding" efforts by DOC to supervise you. We note that this panel has previously made similar observations. We have told you that we believe you are diligently attempting to obstruct DOC's efforts to comply with the Court's order to supervise you on Community Custody Supervision by throwing up as many issues and objections as you can conjure up in order to avoid the reality of your legal obligations in this matter.

Your position that DOC cannot legally impose work crew participation on you is not relevant to the violation charged in this matter. You were charged with and found guilty of failing to fill out paperwork related to work crew. You were not charged with not completing work crew. You admit to refusing to fill out the paperwork as directed by the CCO.

Your appeal issues regarding the two fail to take a polygraph violations were similar in several ways to prior appeals you have submitted on similar violations. For example, you say the CCO did not call the polygraphers as witnesses. We have previously explained in detail that if you want someone as a witness, it is your prerogative to call them. It is not the responsibility of the CCO to call people that you want as witnesses unless the CCO is depending on testimony from those people to support their allegations. In this case the basic issues around the polygraph exam violations were not contested. That is, your own testimony showed that what the CCO testified to was accurate. You admit there was a time mix up, but neglect to mention that despite that mix-up the polygrapher was willing to conduct the exam – an offer you declined. On the second date you notified DOC by e-mail of your refusal to scheduled exam, and announced when you would be there to be taken into custody. You say that the decisions on this subject were made based on impermissible evidence. The panel, again, notes that your own testimony substantiated the allegations. We believe that your position that you can refuse to comply with any DOC staff direction unless you are provided statutory confirmation of their right to give you such direction is an example of the afore mentioned "clouding". We believe, simply, that you are continuing to utilize any obstruction technique that occurs to you to avoid compliance with the requirements imposed by the Court and DOC.

Your rationale that writing a paper on the subject of how pedophilia impacts the victims and the community in general violates your fifth amendment rights is not credible. The fifth amendment protects you from having to make statements that would incriminate you. Responding to the question posed would not, in our belief, fall under the protections of the fifth amendment.

X        You were found guilty based upon sufficient evidence.


**AND THEREFORE**

The decision of the Hearing Officer is:

☐        Reversed and vacated
☐        Reversed and remanded for a new hearing.  You will be notified of the hearing date, when scheduled.
☐        Modified as follows:
X        Affirmed

_Cly F. Evans_

September 20, 2006

DOC REGIONAL APPEALS PANEL MEMBER
_David Gilkey_

DATE
September 20, 2006

DOC REGIONAL APPEALS PANEL MEMBER
_Nanci Parks_

DATE
September 20, 2006

DOC REGIONAL APPEALS PANEL MEMBER

DATE

TYPIST / CCO / 09-235draft
DATE

Distribution:     **ORIGINAL** - Hearing File     **COPY** - Offender, CCO, Hearing Officer, Hearing Officer 2, Work or Pre-Release Sup., Facility / Unit Evidence Custodian, Field File, Hearings Manager

Appendix C



**STATE OF WASHINGTON
DEPARTMENT OF CORRECTIONS**

**POLYGRAPH EXAMINATION -
AUTHORIZATION FOR RELEASE OF INFORMATION**

I, _____, DOC # _____

**PRINT NAME**

hereby authorize the Department of Corrections/Office of Correctional Operations to exchange
information with any Department of Corrections contracted certified polygraph examiner.
Additionally, I authorize the Department of Corrections to release polygraph interview
documentation and polygraph testing conclusions to treatment providers, collateral agencies,
courts, or administrative officers.

I understand that disclosures made during polygraph examinations such as: providing deceptive
responses to polygraph questions or failing to submit to polygraph testing may be a violation of my
supervision and will be reported to appropriate authorities. This could result in sanction being imposed
including loss of liberty.

This authorization, unless expressly limited by myself in writing, is applicable to records pertaining to
diagnosis and/or treatment for substance abuse, medical issues, mental health, or psychiatric conditions
to include sexual deviancy. This authorization also includes the release of this information when it is
integrally related to the preparation and administration of polygraph examining.

This authorization shall remain in effect until such time that the Department of Corrections/Office of
Correctional Operations no longer has jurisdiction or until my term of supervision has expired.

| X | SIGNATURE OF OFFENDER | | DATE |
|---|---|---|---|
| | **WITNESS NAME** | **TITLE** | **DATE** |

I Explicitly Do Not Waive any of this
form. As it is not appliable — as my
J&S does not include any item.
of #3 of this Release form.

Distribution: ORIGINAL-Offender File

DOC 05-753 (3/2000) PQL

DOC 400.360

19

Appendix

# Polygraph Examination Statement of Consent

| | | |
|---|---|---|
| Location: | Date: | Time: |

Consent of:

1.    I hereby consent to submit to a polygraph examination in connection with supervision & treatment that is required by the Department of Corrections or:

_____

2.    The examiner satisfactorily explained the examination to me.  He further explained that he is a qualified polygraph examiner who is an independent contractor and does not have control over, or responsibility for the actions of anyone else.  I hold Northwest Polygraph Services, Inc. and the examiner harmless and free from any liability for any acts or omissions by any other person or agency.

3.    I understand that I have the unqualified right to refuse to take this examination, answer any questions, and that I may stop the examination at any time.

4.    Revised code of Washington 49.44.120 reads as follows:

"It shall be unlawful for any person, firm, corporation or the state of Washington, its political subdivisions or municipal corporations to require, directly or indirectly, that any employee or prospective employee (to) take or be subjected to any lie detector or similar tests as a condition of employment or continued employment; PROVIDED, That this section shall not apply to persons making initial application for employment with any law enforcement agency."

5.    I authorize Northwest Polygraph Services, Inc. to release information and conclusions arising from the examination to _____
and other contract employees.  I release and hold harmless all persons/agencies from any and all claims, physical or mental or liabilities alleged to result from or arise out of this examination.    *I do not WAVE NPS liability*

X _____
**(CLIENT SIGNATURE)**    **(Date)**    (Time)    (Examiner/date)

6.    Now that this examination has been completed. I reaffirm my agreement with the above paragraphs. I also acknowledge that during the examination I was not subjected to any threats, promises, physical or mental abuse or injury.    *I do not Waive or Reaffirm.*

X _____
**(CLIENT SIGNATURE)**    **(Date)**    (Examiner/date)

### JUVENILE CONSENT

I certify that I am the Parent or guardian of _____
and hereby, give my consent to have Northwest Polygraph Services, Inc. administer a polygraph examination on _____, regarding _____
I authorize Northwest Polygraph Services, Inc. to release information regarding this examination to:

_____

_____    _____
Parent or Guardian/date                              Examiner/date

*in any form or manner*

20

*(handwritten marginal notes:) this is the ... table ...*
*this is too broad*
*this is ... acknowl... until imp... of ...*
*I will ... explorat... that.*

Oct 3, 2006                          Case # : 58704-8-I

Sara J Olson                         Court of Appeals, DIV I
Attorney Generals Office             One Union Square
PO BOX 40116                         600 University Street
Olympia, WA 98504-0116               Seattle, WA 98101


RE: Deceptive Mis-statements - SUSPECT
RE: MOTION to investigate


Dear Sara J, Olson,
    On 10/3/06 I received a violation packet from
CO Theodore Lewis (243 KCSAV) which makes the
following disturbing and germaine statement regarding
my refusal to "waive" my rights in order to submit
to a polygraph exam. The waivers provided by DOC,
in the last instance, (DOC 05-737)), is critical
in my unwillingness to waive my rights without
the offer of immunity as offered by the courts
and case law cited in this aforementioned petition.
    The statement CO Lewis improperly attributed to
me was the following:

        "Mr. Piña added that taking and passing a polygraph
    examination would produce information which would
    be potentially damaging to his case or appeal."
    RoAV dated 10/3/06, p. 3 (Doc. 05-231; Doc 320,155;
    Doc 460,130).

2

1/2

The injection of this statement, during a period of an allegation/personal restraint petition answer by your body is disturbing.

I will make it clear, as an issue of matter of fact, not to be conveniently misstated I never made such statement as to "passing a polygraph." In fact my statement was clear:

"I will not waive my rights to be administered an exam, without the guarantee of immunity. Further, since the beginning of this case I have had the state misstate my words in order to seek, and receiving, a wrongful conviction; so I will not allow any ability for investigation of my self until final judgement, has been received."

I find CCW's Lewis, final hour, misstatement opportune, sophisticated and disturbing. I further, request this here court to investigate his words as to this egregious incision.

Respectfully, submitted today under the penalty of perjury this day of October 3rd, 2006,

Michael A. Pin—
875424)

CC: LEWIS, T
   DOC Hearing Board
   Judge Palmer Robinson

22

2/2

Name Michael Pima 206079109

Reg. # E124

King County Correctional Facility.

620 West James Street

Kent, WA 98032

Legal Mail

Clerk, US District Court

U.S. Courthouse, Lobby level

700 Stewart Street

Seattle, WA 98101-1271